UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA and PEOPLE OF THE STATE OF WEST VIRGINIA, *ex rel.* WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION<br><br>Plaintiffs,<br><br>v.<br><br>CSX TRANSPORTATION, INC.,<br><br>Defendant. | Civil Action No.   2:18-cv-01175<br><br>COMPLAINT FOR CIVIL PENALTIES UNDER THE CLEAN WATER ACT, THE WEST VIRGINIA WATER POLLUTION CONTROL ACT, and THE WEST VIRGINIA GROUNDWATER PROTECTION ACT |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the People of the State of West Virginia, on behalf of the West Virginia Department of Environmental Protection ("WVDEP"), file this Complaint and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action for civil penalties brought against Defendant CSX Transportation, Inc. ("Defendant") under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, the West Virginia Water Pollution Control Act ("WPCA"), W. Va. Code § 22-11-1 *et seq.*, and the West Virginia Groundwater Protection Act ("GPA"), W. Va. Code § 22-12-1 *et seq.*, for an oil spill in Mount Carbon, West Virginia, caused by the derailment of approximately twenty-seven of Defendant's railcars.

## JURISDICTION, AUTHORITY, VENUE, AND NOTICE

2. This Court has jurisdiction over the subject matter of this action and over the parties pursuant to Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), and 28 U.S.C. §§ 1331, 1345, 1355, and 1367. The Court has supplemental jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367 because the state law causes of action are so related to the United States' claims that they form part of the same case or controversy.

3. Authority to bring this action on behalf of the United States is vested in the United States Department of Justice by Section 506 of the CWA, 33 U.S.C. § 1366; 28 U.S.C. §§ 516 and 519; and Section 10(a) of Executive Order No. 12,777, 56 Fed. Reg. 54,757 (Oct. 22, 1991).

4. Authority to bring this action on behalf of the State of West Virginia is vested in

the WVDEP under W. Va. Code §§ 22-11-7, 22-11-22, 22-12-5, and 22-12-10.

5. Venue is proper in this District pursuant to Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), and 28 U.S.C. §§ 1391 and 1395(a), because Defendant conducts business in this District and the derailment and oil spill giving rise to the claims alleged in this Complaint occurred in this District.

DEFENDANT

6. Defendant is a Virginia corporation with headquarters located at 500 Water Street in Jacksonville, Florida. Defendant operates a rail network that encompasses about 21,000 route miles of track in twenty-three states, including West Virginia, as well as the District of Columbia, and the Canadian provinces of Ontario and Quebec.

STATUTORY AND REGULATORY BACKGROUND

Section 311 of the Clean Water Act

7. Section 311(b) of the CWA, 33 U.S.C. § 1321(b), prohibits the discharge of oil or hazardous substances into or upon the navigable waters of the United States or adjoining shorelines in such quantities as the President determines may be harmful to the public health or welfare or environment of the United States.

8. The CWA defines "discharge" to include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping." 33 U.S.C. § 1321(a)(2).

9. The CWA defines "oil" as "oil of any kind or in any form, including, but not limited to, petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil." 33 U.S.C. § 1321(a)(1).

10. The CWA defines "navigable waters" as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

11. As defined by 40 C.F.R. § 122.2, the term "waters of the United States" includes traditional navigable waters, interstate waters, and tributaries of such waters.

12. Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), EPA, acting through its delegated authority under Executive Order No. 11,735, 38 Fed. Reg. 21,243 (Aug. 7, 1973), has determined by regulation that discharges of oil in such quantities as may be harmful to the public health or welfare or environment of the United States include discharges of oil that "(a) [v]iolate applicable water quality standards; or (b) [c]ause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines." 40 C.F.R. § 110.3.

13. Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), provides that any person who is the owner, operator, or person in charge of an onshore facility from which oil is discharged in violation of Section 311(b)(3) of the CWA shall be subject to a civil penalty.

14. Section 311(a) of the CWA defines "person" to include corporations, 33 U.S.C. § 1321(a)(7); and "onshore facility" as "any facility (including, but not limited to, motor vehicles and rolling stock) of any kind located in, on, or under, any land within the United States other than submerged land," 33 U.S.C. § 1321(a)(10).

15. Pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and the Federal Civil Penalty Inflation Adjustment Act, 28 U.S.C. § 2461 note, as implemented by EPA's 2013 and 2016 Civil Monetary Penalty Inflation Adjustment Rules, 78 Fed. Reg. 66643-01 (Nov. 6, 2013) and 81 Fed. Reg. 43091-01 (July 1, 2016), codified at 40 C.F.R. § 19.4, each violation of Section 311(b)(3) occurring after December 6, 2013, and on or before November 2, 2015, is subject to a civil penalty of up to $37,500 per day of violation or up to $2,100 per barrel of oil discharged.

West Virginia Water Pollution Control Act

16. Section 6 of the West Virginia WPCA, W. Va. Code § 22-11-6, requires prompt compliance with all water quality standards and effluent limitations. West Virginia's Requirements Governing Water Quality Standards, W. Va. Code R. § 47-2-3, delineate conditions that are not allowable in State waters, including the discharge of any waste that causes or materially contributes to distinctly visible oily slicks or that "adversely alters the integrity of the waters of the State including wetlands," or conditions that pose any "significant adverse impact to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." W. Va. Code R. § 47-2-3.2.i.

17. Section 8 of the West Virginia WPCA, W. Va. Code § 22-11-8, prohibits the discharge of any pollutant by any person from a point source into waters of the State of West Virginia, except, *inter alia,* in compliance with applicable water quality standards, effluent limitations, and all other requirements of the WPCA.

18. West Virginia's Code of State Rules mandates that "[n]o person shall discharge pollutants from a point source into State waters except as authorized by a State NPDES permit." W. Va. Code R. § 47-10-3.1.

19. Section 3 of the West Virginia WPCA defines "pollutant" to mean, *inter alia*, "other wastes," W. Va. Code § 22-11-3(16), which include "oil . . . or all other materials and substances not sewage or industrial wastes which may cause or might reasonably be expected to cause or to contribute to the pollution of any of the waters of the state." W. Va. Code § 22-11-3(12).

20. The West Virginia WPCA also defines "pollutant" to include "industrial wastes," W. Va. Code § 22-11-3(16), meaning "any liquid, gaseous, solid or other waste substance, or a

combination thereof, resulting from or incidental to any process of industry, manufacturing, trade or business, or from or incidental to the development, processing or recovery of any natural resources." W. Va. Code § 22-11-3(11).

21. Section 3 of the West Virginia WPCA, W. Va. Code § 22-11-3, defines "person" to include corporations. W. Va. Code § 22-11-3(14).

22. Section 3 of the West Virginia WPCA, W. Va. Code § 22-11-3, defines "point source" as "any discernible, confined and discrete conveyance, including, but not limited to, any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock or vessel or other floating craft, from which pollutants are or may be discharged." W. Va. Code § 22-11-3(15).

23. Section 22 of the West Virginia WPCA, W. Va. Code § 22-11-22, provides that any person who violates any provision of the WPCA or any rule issued pursuant to the WPCA—including the prohibition against discharging pollutants from a point source into State waters except as authorized by a State NPDES permit, W. Va. Code R. § 47-10-3.1—is subject to a civil penalty of up to $25,000 per day for each violation.

<u>West Virginia Groundwater Protection Act</u>

24. Section 4 of the West Virginia GPA, W. Va. Code § 22-12-4, authorizes the Secretary of WVDEP to promulgate standards of purity and quality for groundwater of the State, including maximum contaminant levels permitted for groundwater. Section 4 further states that "[w]here the concentration of a certain constituent exceeds such standard[s] due to human-induced contamination, no further contamination by that constituent is allowed and every reasonable effort shall be made to identify, remove or mitigate the source of such contamination." W. Va. Code § 22-12-4(b).

25. Section 3 of the West Virginia GPA, W. Va. Code § 22-12-3, defines "person" to include corporations, W. Va. Code § 22-12-3(h); "constituent" as "any chemical or biological substance found in groundwater due to either natural or man-made conditions," W. Va. Code § 22-12-3(d); and "pollution" to mean "the man-made or man-induced alteration of the chemical, physical, biological or radiological integrity of the groundwater," W. Va. Code § 22-12-3(i). "Groundwater" is defined as "the water occurring in the zone of saturation beneath the seasonal high water table, or any perched water zones." W. Va. Code § 22-12-3(f), *see also* W. Va. Code R. § 47-12-2.3.

26. Section 5 of the West Virginia GPA, W. Va. Code § 22-12-5, requires groundwater regulatory agencies to develop groundwater protection practices, including rules, permits, and policies, to maintain and protect groundwater at existing standards of purity and to prevent groundwater contamination from facilities. Standards for groundwater purity and quality appear in Appendix A to Rule 47-12 of West Virginia's Code of State Rules. W. Va. Code R. § 47-12-3.1.

27. Rule 47-12 of the West Virginia Code of State Rules prohibits constituents in groundwater from causing a violation of water quality standards in any surface water. W. Va. Code R. § 47-12-3.3. Those water quality standards, in turn, clarify that oily slicks are a general condition "not to be allowed in any waters of the state." W. Va. Code R. § 47-2-3.2.a.

28. Section 10 of the West Virginia GPA, W. Va. Code § 22-12-10, authorizes WVDEP to commence a civil action and provides that any person who violates any provision of the GPA, or any rule issued pursuant to the GPA, is subject to a civil penalty in accordance with the provisions of Section 22 of the West Virginia WPCA, or of up to $25,000 per day for each violation.

GENERAL ALLEGATIONS

29. Defendant is a "person" within the meaning of Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7); the West Virginia WPCA, W. Va. Code § 22-11-3; and the West Virginia GPA, W. Va. Code § 22-12-3.

30. On February 16, 2015, Defendant's train was transporting Bakken crude oil through Mount Carbon, West Virginia. Headed to Yorktown, Virginia, the train consisted of two locomotives, two buffer cars, and 107 tank cars or railcars.

31. At times relevant to this action, Defendant was the "owner or operator" of the railcars containing Bakken crude oil as defined by Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6), and by the West Virginia Code of State Rules, W. Va. Code R. § 47-10-2.34.

32. At about 1:30 p.m. on February 16, 2015, twenty-seven railcars from Defendant's train derailed from the tracks adjacent to the Kanawha River and Armstrong Creek in Mount Carbon, West Virginia ("the Derailment Site").

33. The twenty-seven railcars collided after derailing, damaging approximately twenty cars, which began to spew Bakken crude oil. Some damaged railcars caught fire and exploded. The oil spill, fires, and explosions destroyed a nearby house and garage. The damaged railcars also discharged Bakken crude oil into Armstrong Creek and the Kanawha River and onto their adjoining shorelines (the "Derailment Incident").

34. Soil excavation occurred for months at the Derailment Site as part of the cleanup following the Derailment Incident. The excavation process involved digging various pits to a depth of six to eight feet. In July and August 2015, State inspectors observed oily slicks on top of groundwater pooled in the pits at the Derailment Site. Oily slicks are not permitted under West Virginia water quality standards for State waters, including groundwater. W. Va. Code R.

§§ 47-2-3.2.a and 47-12-3.3.

35. After the Derailment Incident, Defendant installed groundwater monitoring wells near the Derailment Site. Groundwater samples drawn from those wells in June 2016 indicated exceedances of the standards for purity and quality for groundwater in the State, as defined by the constituent concentrations identified in Appendix A to Rule 47-12 of the West Virginia Code of State Rules, W. Va. Code R. § 47-12-3.1. The exceedances included standards for benzene and benzo(a)pyrene.

36. Bakken crude oil is an "oil" as defined in Section 311(a)(1) of CWA, 33 U.S.C. § 1321(a)(1), and a "pollutant" as defined by the West Virginia WPCA § 22-11-3(16). Bakken crude oil is also a "constituent" or "pollution" as defined by the West Virginia GPA, W. Va. Code § 22-12-3.

37. Defendant's railcars, from which Bakken crude oil discharged, are rolling stock and, therefore, are each an "onshore facility" (collectively, the "Facilities") as defined by Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10), and a "point source" as defined by the West Virginia WPCA, W. Va. Code § 22-11-3(15), and W. Va. Code R. §§ 47-2-2.14 and 47-10-2.38.

38. Because of the Derailment Incident, oil discharged from Defendant's Facilities and caused a film or sheen upon, or discoloration of, the surface of Armstrong Creek and the Kanawha River and upon their adjoining shorelines, and caused an emulsion to be deposited beneath the surface of Armstrong Creek and the Kanawha River.

39. As a result of the Derailment Incident, the oil that discharged from Defendant's Facilities created oily slicks and adversely altered the integrity of the waters of the State, including groundwater.

40. As a result of the Derailment Incident, oil discharged from Defendant's Facilities

and caused exceedances of groundwater purity standards.

41. As of April 2015—two months after the Derailment Incident—cleanup crews continued to collect oil from the Kanawha River and its shorelines, and from other parts of the Derailment Site, including seeps, trenches, and the shorelines of Armstrong Creek.

42. Defendant did not possess a permit to discharge oil into the Kanawha River, Armstrong Creek, their adjoining shorelines, or West Virginia groundwater during or resulting from the Derailment Incident.

43. Armstrong Creek is a tributary to the Kanawha River, a traditionally navigable water with numerous ports that is used for interstate and foreign commerce, both historically and at present. Additionally, West Virginia and Ohio share a border at the confluence of the Kanawha River and the Ohio River, thus making the Kanawha River an interstate navigable water.

44. Armstrong Creek and the Kanawha River each have a bed, banks, and ordinary high water marks.

45. Armstrong Creek and the Kanawha River are "navigable waters" within the meaning of Sections 311(b)(3) and 502(7) of the CWA, 33 U.S.C. §§ 1321(b)(3) and 1362(7), and 40 C.F.R. §§ 110 and 122.2. Armstrong Creek and the Kanawha River are also "waters" of the State of West Virginia within the meaning of the West Virginia WPCA, W. Va. Code § 22-11-3(23).

46. The groundwater observed in excavated pits at the Derailment Site and sampled at the Derailment Site is "groundwater" as defined in W. Va. Code § 22-12-3(f) and W. Va. Code R. § 47-12-2.3.

47. The Derailment Incident caused a "discharge" of oil from the Facilities, as

defined in Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2), into or upon the navigable waters of the United States or adjoining shorelines "in such quantities as may be harmful," within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), and 40 C.F.R. § 110.3(b).

48. The Derailment Incident caused an unpermitted discharge of a pollutant from a point source into waters of the State of West Virginia in violation of Section 8 of the West Virginia WPCA, W. Va. Code § 22-11-8.

49. The Derailment Incident violated water quality standards and effluent limitations pursuant to Section 6 of the West Virginia WPCA, W. Va. Code § 22-11-6, as the oil created oily slicks and adversely altered the integrity of the waters of the State, conditions that are not allowed for a State water under W. Va. Code R. § 47-2-3.

50. The Derailment Incident was a human-induced contamination of West Virginia groundwater, which caused concentrations of certain constituents, including benzene and benzo(a)pyrene, to exceed their purity and quality standards, and which caused oily slicks to appear in groundwater in excavated pits at the Derailment Site. Such human-induced contamination is prohibited by the West Virginia GPA, W. Va. Code § 22-12-4(b), and by its regulation, W. Va. Code R. § 47-12-3.3, respectively.

FIRST CLAIM FOR RELIEF

Violations of Section 311 of the Clean Water Act

51. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

52. The discharge resulting from the Derailment Incident violated Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

53. Pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and

EPA's 2013 and 2016 Civil Monetary Penalty Inflation Adjustment Rules, 78 Fed. Reg. 66643-01 (Nov. 6, 2013) and 81 Fed. Reg. 43091-01 (July 1, 2016), codified at 40 C.F.R. § 19.4, Defendant is liable for a civil penalty of up to $2,100 per barrel of oil discharged.

## SECOND CLAIM FOR RELIEF

### Violations of the West Virginia Water Pollution Control Act

54. Paragraphs 1 through 53 are realleged and incorporated herein by reference.

55. The discharges resulting from the Derailment Incident violated Section 6 of the West Virginia WPCA, W. Va. Code § 22-11-6.

56. The discharges resulting from the Derailment Incident violated Section 8 of the West Virginia WPCA, W. Va. Code § 22-11-8.

57. Pursuant to Section 22 of the West Virginia WPCA, W. Va. Code § 22-11-22, Defendant is liable for a civil penalty of up to $25,000 per day for each violation.

## THIRD CLAIM FOR RELIEF

### Violations of the West Virginia Groundwater Protection Act

58. Paragraphs 1 through 57 are realleged and incorporated herein by reference.

59. The contamination resulting from the Derailment Incident violated Section 4 of the West Virginia GPA, W. Va. Code § 22-12-4.

60. The contamination resulting from the Derailment Incident violated W. Va. Code R. § 47-12-3.3.

61. Pursuant to Section 10 of the West Virginia GPA, W. Va. Code § 22-12-10, Defendant is liable for a civil penalty of up to $25,000 per day for each violation.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the People of the State of West Virginia *ex rel.* West Virginia Department of Environmental Protection, respectfully request that the Court:

1.   Enter judgment against Defendant and award the United States civil penalties in an amount up to $2,100 per barrel of oil discharged in violation of Section 311(b)(3) of the Clean Water Act, 33 U.S.C. § 1321(b)(3);

2.   Enter judgment against Defendant and award the State of West Virginia civil penalties in an amount up to $25,000 per day of violation for violations of Sections 6 and 8 of the West Virginia Water Pollution Control Act, W. Va. Code §§ 22-11-6 and 22-11-8;

3.   Enter judgment against Defendant and award the State of West Virginia civil penalties in an amount up to $25,000 per day of violation for violations of Section 4 of the West Virginia Groundwater Protection Act, W. Va. Code § 22-12-4;

4.   Grant such other relief as this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

**s/ Devon A. Ahearn**
DEVON A. AHEARN
California Bar Number: 307275
Attorney for the United States
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 514-2717
Fax: (202) 514-0097
E-mail: devon.ahearn@usdoj.gov

        MICHAEL B. STUART
United States Attorney

**s/ Fred B. Westfall, Jr.**

FRED B. WESTFALL, JR.
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States of America
P.O. Box 1713
Charleston, WV 25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov

OF COUNSEL:

LAUREN E. ZIEGLER
Pennsylvania Bar Number: 312396
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street, 3RC42
Philadelphia, PA 19103
Phone: (215) 814-2623
Fax: (215) 814-2604
Email: ziegler.lauren@epa.gov

FOR THE PEOPLE OF THE STATE OF WEST VIRGINIA, *ex rel.* WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION:

SCOTT G. MANDIROLA
Director
Division of Water and Waste Management
West Virginia Department of Environmental Protection

**s/ Charles Scott Driver**

CHARLES SCOTT DRIVER
West Virginia Bar Number: 9846
Attorney for West Virginia
Senior Counsel
West Virginia Department of Environmental Protection
601 57th Street Southeast
Charleston, WV 25304
Phone: (304) 926-0499, ext. 1453
Fax: (304) 926-0461
E-mail: Charles.S.Driver@wv.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 23, 2018, I electronically filed a true and correct copy of the foregoing Complaint with the Clerk of the Court using the CM/ECF system and that I served the foregoing on counsel for CSX Transportation, Inc. listed below by U.S. Mail and e-mail.

Kevin J. Finto
Hunton and Williams LLP
951 E. Byrd Street
Richmond, VA 23229
Email: kfinto@hunton.com

*Counsel for Defendant CSX Transportation, Inc.*

                                        **s/ Devon A. Ahearn**
                                        DEVON A. AHEARN
                                        California Bar Number: 307275
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        P.O. Box 7611
                                        Washington, DC 20044-7611
                                        Phone: (202) 514-2717
                                        Fax: (202) 514-0097
                                        E-mail: devon.ahearn@usdoj.gov

                                        *Counsel for the United States*