UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA and PEOPLE OF THE STATE OF WEST VIRGINIA, *ex rel.* WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION | ) ) ) ) ) ) |
| | Civil Action No. 2:18-cv-01175 |
| Plaintiffs, | ) ) ) ) ) ) |
| | CONSENT DECREE UNDER THE CLEAN WATER ACT, THE WEST VIRGINIA WATER POLLUTION CONTROL ACT, and THE WEST VIRGINIA GROUNDWATER PROTECTION ACT |
| v. | ) ) |
| CSX TRANSPORTATION, INC., | ) ) |
| Defendant. | ) ) ) |

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ...................................................................................1
II.     APPLICABILITY .....................................................................................................2
III.    DEFINITIONS ..........................................................................................................2
IV.     CIVIL PENALTY .....................................................................................................3
V.      STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT..................................4
VI.     STIPULATED PENALTIES ....................................................................................5
VII.    FORCE MAJEURE ..................................................................................................7
VIII.   DISPUTE RESOLUTION ........................................................................................8
IX.     INFORMATION RETENTION ..............................................................................10
X.      EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .................................11
XI.     COSTS ....................................................................................................................11
XII.    NOTICES ................................................................................................................12
XIII.   EFFECTIVE DATE ................................................................................................13
XIV.    RETENTION OF JURISDICTION .........................................................................13
XV.     MODIFICATION ....................................................................................................13
XVI.    TERMINATION ......................................................................................................13
XVII.   PUBLIC PARTICIPATION ....................................................................................14
XVIII.  SIGNATORIES/SERVICE ....................................................................................14
XIX.    INTEGRATION ......................................................................................................15
XX.     FINAL JUDGMENT ..............................................................................................15

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and Plaintiff State of West Virginia, on behalf of the West Virginia Department of Environmental Protection ("DEP"), have filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant, CSX Transportation, Inc., violated Section 311(b) of the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b), the West Virginia Water Pollution Control Act, W. Va. Code § 22-11-22, and the West Virginia Groundwater Protection Act, W. Va. Code § 22-12-10 (hereinafter, "Complaint").

The Complaint against Defendant alleges that Defendant caused the discharge of oil into the waters of the United States in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), and waters of the State in violation of W. Va. Code §§ 22-11-6, 22-11-8, 22-12-10.

Specifically, the Complaint alleges that on February 16, 2015, approximately 27 of Defendant's railcars, each containing crude oil, derailed and collided in Mount Carbon, West Virginia (hereinafter, the "Derailment Incident"). The Derailment Incident caused the spill of crude oil into Armstrong Creek and the Kanawha River, which are waters of the United States and the State, and onto their adjoining shorelines.

Defendant does not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.       JURISDICTION AND VENUE

1.       This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), and over the Parties.  This Court has supplemental jurisdiction over the State law claims asserted by the State of West Virginia pursuant to 28 U.S.C. § 1367.  Venue lies in this District pursuant to Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over the Defendant and consents to venue in this judicial district.

2.       For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 311(b)(7) of the CWA, 33 U.S.C. § 1321(b)(7).

## II.    APPLICABILITY

3.    The obligations of this Consent Decree apply to and are binding upon the United States and the State, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.    In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.    DEFINITIONS

5.    Terms used in this Consent decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Decree, and, to the extent any terms are not defined in the CWA or such regulations, as applicable, they shall have the meanings assigned to them in the West Virginia Water Pollution Control Act, W. Va. Code § 22-11-1, et seq., and the West Virginia Groundwater Protection Act, W. Va. Code § 22-12-1, et seq., and any regulations promulgated pursuant thereto.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Complaint" shall mean the complaint filed by the United States and the State in this action;

b.    "Consent Decree" or "Decree" shall mean this Decree;

c.    "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d.    "Defendant" shall mean CSX Transportation, Inc.;

e.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

f.    "Effective Date" shall have the definition provided in Section XIII;

g.    "Facility" shall mean the location of Defendant's train derailment in Mount Carbon, West Virginia, at the confluence of Armstrong Creek and the Kanawha River, including the railcars, the immediate impacted rail lines and equipment involved in the derailment at the time of the Derailment Incident;

h.    "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

2

        i.      "Parties" shall mean the United States, the State, and Defendant;

        j.      "Section" shall mean a portion of this Decree identified by a roman numeral;

        k.      "State" shall mean the State of West Virginia; and

        l.      "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.    CIVIL PENALTY

6.      Within 45 Days after the Effective Date, Defendant shall pay the sum of $1,200,000 as a federal civil penalty, together with interest accruing from the Effective Date, at the rate specified in 28 U.S.C. § 1961 as of the Effective Date.

7.      Defendant shall pay the federal civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Southern District of West Virginia no later than one business day after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> Daniel Schmitt
> Counsel
> CSX Transportation, Inc.
> 500 Water Street J150
> Jacksonville, FL  32202
> 904-359-1126
> Daniel_Schmitt@csx.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XII (NOTICES).

At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XII; and (iii) to EPA in accordance with Section XII.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. CSX Transportation, Inc.*, and shall reference the civil action number, CDCS Number and DOJ case number 90-5-1-1-11264.

8.     Within 45 Days after the Effective Date, Defendant shall pay a civil penalty of $1,000,000 to the State for deposit into the State's Water Quality Management Fund, in accordance with instructions provided to Defendant by the State.  At the time of payment, Defendant shall send notice that payment has been made to the State in accordance with Section XII (NOTICES).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. CSX Transportation, Inc.*, and shall reference the civil action number.

9.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VI (STIPULATED PENALTIES) in calculating its federal, State, or local income tax.

## V.     STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT

10.     In settlement of the State's claim for penalties under the West Virginia Water Pollution Control Act, W. Va. Code § 22-11-22, and the West Virginia Groundwater Protection Act, W. Va. Code § 22-12-10, Defendant shall pay $500,000 to fund a State Supplemental Environmental Project ("State SEP") for critical upgrades to the Kanawha Falls Public Service District water treatment facility in Fayette County, West Virginia (hereinafter, "Kanawha Falls PSD").  The Kanawha Falls PSD is a public corporation and political subdivision of the State of West Virginia. The Kanawha Falls PSD's wastewater treatment facility is located in Deepwater, West Virginia, and has an outfall along the Kanawha River upstream of the location of the Derailment Incident.  The Kanawha Falls PSD provides water and sewer services to customers in Fayette County, including households near the derailment site, the City of Smithers, and the Armstrong Public Service District.

11.     The upgrades through this State SEP are expected to improve surface water quality in the Kanawha River, including in the portion of that water affected by the Derailment Incident.  The State shall have sole discretion to select and design a plan for carrying out the work performed through this State SEP for the Kanawha Falls PSD, which may include:

       a.     improving the existing wastewater treatment plant by: replacing and/or repairing dilapidated equipment, piping, and lighting; renovating plant lift stations by cleaning and recoating the station interiors, replacing existing concrete tops, plugging and abandoning existing lines, installing new pumps, guiderails, a new valve vault, and new controls, and abandoning the dry pit; improving headworks area by replacing inoperable machinery, cleaning grit channels and valves, replacing lights, heaters, and doors, and painting the building; repairing treatment units by cleaning, repairing, or replacing pipes, valves, clarifier equipment, and other components; cleaning and repairing wash water pump stations; replacing effluent flow meters; repairing the effluent headwall; replacing the wastewater treatment plant emergency generator; replacing lights, heating, and electrical components;

4

     b.     rehabilitating the Kanawha Falls PSD's eleven collection system lift stations by installing new pumps, adding electric hoists and hoist structures, and/or repairing or replacing guide rails, station piping, and valves;

     c.     replacing force main #4, an approximately 12,700-foot line that conveys flow from a lift station to a manhole, and that currently cannot operate without being pumped with water from the Kanawha River;

     d.     purchasing and installing equipment, including: rolling equipment, such as a dump truck, a 4x4 backhoe with extended boom, a backhoe trailer, a sewer jetter/vac, and a service truck with a hoist; portable emergency pumps and pumping connections for lift stations; and/or flow meters to ensure that wastewater treatment for the City of Smithers and the Armstrong Public Service District is properly billed.

12.     The State shall establish an escrow account with the West Virginia State Treasurer's Office for use in funding the State SEP ("Escrow Account"). Within 45 days after the Effective Date, the Defendant shall pay $500,000, as described in Paragraph 10, to the Escrow Account in accordance with instructions provided by the State.

13.     Defendant's performance of the State SEP is complete upon payment of the required funds to the Escrow Account, as described in this Section.

## VI.    STIPULATED PENALTIES

14.     Defendant shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section VII (FORCE MAJEURE). A violation includes failing to perform any obligation required by the terms of this Decree, including any plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

15.     <u>Late Payment of Federal Civil Penalty</u>. If Defendant fails to pay the civil penalty to the United States when due as required under Paragraph 6, Defendant shall pay a stipulated penalty of $1,500 per Day for each Day that the payment is late to the United States.

16.     <u>Late Payment of State Civil Penalty</u>. If Defendant fails to pay the civil penalty to the State when due as required under Paragraph 8, Defendant shall pay a stipulated penalty of $1,500 per Day for each Day that the payment is late to the State.

17.     <u>State SEP Compliance</u>. If Defendant fails to fund the State SEP required under Section V (STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT) in accordance with the State's requirements, including but not limited to the applicable deadline(s) contained in Section

V, Defendant shall pay a stipulated penalty of $1,500 per Day for each Day that the payment is late to the State.

18.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

19.     Defendant shall pay stipulated penalties to the United States and the State within 30 Days of a written demand by either Plaintiff.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

20.     Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.  Each Plaintiff may only exercise such discretion with respect to stipulated penalties due to it.

21.     Stipulated penalties shall continue to accrue as provided in Paragraph 18, during any Dispute Resolution, but need not be paid until the following:

    a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA or the State that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States or the State within 30 Days of the effective date of the agreement or the receipt of EPA's or the State's decision or order.

    b.      If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c., below.

    c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

22.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 7, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.  Defendant shall pay stipulated penalties owing to the State in the same manner set forth and with the confirmation notices required by Paragraph 8, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

23.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in

6

28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

24.    The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

25.    Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' or the State's exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section X (EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS), the United States and the State expressly reserve the right to seek any other relief they deem appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional State Supplemental Environmental Projects, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## VII.    FORCE MAJEURE

26.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

27.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA Region III, within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven days thereafter, Defendant shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any

circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

28.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

29.     If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

30.     If Defendant elects to invoke the dispute resolution procedures set forth in Section VIII (DISPUTE RESOLUTION), it shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 26 and 27.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## VIII.   DISPUTE RESOLUTION

31.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of Defendant arising under this Decree.

32.     <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within seven Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

33.     <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

34.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

35.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XII (NOTICES), a motion requesting judicial resolution of the dispute.  The motion must be filed within ten Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

36.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

37.     Standard of Review

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 32 pertaining to the adequacy or appropriateness of any items requiring approval by EPA under this Consent Decree, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.     <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 32, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

38.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent

Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 21.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VI (STIPULATED PENALTIES).

## IX.   INFORMATION RETENTION

39.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the State, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

40.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendant shall deliver any such documents, records, or other information to EPA or the State.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

41.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

42.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## X.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

43.   This Consent Decree resolves the civil penalty claims of the United States and the State for the violations alleged in the Complaint filed in this action through the date of lodging.

44.   The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  Except to the extent described in Paragraph 43, this Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties, injunctive relief, natural resource damages, or response costs under the CWA or its implementing regulations, or under other federal or state laws, regulations, or permit conditions.

45.   In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, natural resource damages, response costs, or other appropriate relief relating to the Derailment Incident, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 43.

46.   This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, 33 U.S.C. § 1251, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

47.   This Consent Decree does not limit or affect the rights of Defendant or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

48.   This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XI.   COSTS

49.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty, to

require Defendant to make the payment for the State SEP, or to collect any stipulated penalties due but not paid by Defendant.

## XII.   NOTICES

50.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email:          eescdcopy.enrd@usdoj.gov
                                           Re: DJ # 90-5-1-1-11264

As to the United States by mail:           EES Case Management Unit
                                           Environment and Natural Resources Division
                                           U.S. Department of Justice
                                           P.O. Box 7611
                                           Washington, DC  20044-7611
                                           Re: DJ # 90-5-1-1-11264

As to EPA by mail and email:               Paula Curtin
                                           Spill Coordinator
                                           Environmental Protection Agency Region III
                                           USEPA Wheeling Operations Office
                                           303 Methodist Building
                                           11th and Chapline Streets
                                           Mailcode: 3HS61
                                           Wheeling, WV 26003
                                           Curtin.paula@epa.gov

As to the State:                           Chief Inspector
                                           Environmental Enforcement
                                           601 57th Street Southeast
                                           Charleston, WV 25304

As to Defendant:                           Daniel Schmitt
                                           Counsel
                                           CSX Transportation, Inc.
                                           500 Water Street J150
                                           Jacksonville, FL  32202
                                           Daniel_Schmitt@csx.com
                                           904-359-1126

With a copy to:

Kevin J Finto
Hunton and Williams LLP
951 E. Byrd Street
Richmond, VA  23229
kfinto@hunton.com

51.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

52.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIII.   EFFECTIVE DATE

53.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIV.   RETENTION OF JURISDICTION

54.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections VIII (DISPUTE RESOLUTION) and XV (MODIFICATION), or effectuating or enforcing compliance with the terms of this Decree.

## XV.   MODIFICATION

55.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

56.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section VIII (DISPUTE RESOLUTION), provided, however, that, instead of the burden of proof provided by Paragraph 37, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVI.   TERMINATION

57.     After Defendant has complied with all requirements of this Consent Decree, and has paid the federal and state civil penalties, has completed the State SEP as required by Section V (STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT), and has paid any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the

United States and the State a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

58.     Following receipt by the United States and the State of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States after consultation with the State agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

59.     If the United States after consultation with the State does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section VIII.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XVII.   PUBLIC PARTICIPATION

60.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XVIII.  SIGNATORIES/SERVICE

61.     Each undersigned representative of Defendant, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and the State of West Virginia, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

62.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

14

## XIX.   INTEGRATION

63.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XX.   FINAL JUDGMENT

64.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Rules 54 and 58 of the Federal Rules of Civil Procedure.


Dated and entered this __ day of _____, 2018


_____

UNITED STATES DISTRICT JUDGE

15

The undersigned consents to the entry of this Consent Decree in *United States v. CSX Transportation, Inc.*, subject to public notice and comment.

FOR THE UNITED STATES OF AMERICA:


6/28/18
DATE

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


DEVON A. AHEARN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

16

The undersigned consents to the entry of this Consent Decree in *United States v. CSX Transportation, Inc.*, subject to public notice and comment.

FOR THE UNITED STATES OF AMERICA:


7-17-2018
DATE

FRED B. WESTFALL, JR.
Assistant United States Attorney
United States Attorney's Office
Southern District of West Virginia

17

The undersigned consents to the entry of this Consent Decree in *United States v. CSX Transportation, Inc.*, subject to public notice and comment.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY REGION III:


5.30.2018
DATE

COSMO SERVIDIO
Regional Administrator
U.S. Environmental Protection Agency, Region III


MARY B. COE
Regional Counsel
U.S. Environmental Protection Agency, Region III


LAUREN ZIEGLER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
Office of Regional Counsel

18

The undersigned consents to the entry of this Consent Decree in *United States v. CSX Transportation, Inc.*, subject to public notice and comment.

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY OFFICE OF ENFORCEMENT AND COMPLIANCE ASSURANCE:


5/30/18
DATE

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


5/25/18
DATE

ROSEMARIE KELLEY
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


5-11-18
DATE

MARK POLLINS
Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

19

The undersigned consents to the entry of this Consent Decree in *United States v. CSX Transportation, Inc.*, subject to public notice and comment.

FOR THE STATE OF WEST VIRGINIA:


___6/4/18___
DATE

SCOTT G. MANDIROLA
Director
Division of Water and Waste Management


CHARLES SCOTT DRIVER
Senior Counsel
Office of Legal Services
West Virginia Department of Environmental Protection

20

The undersigned consents to the entry of this Consent Decree in *United States v. CSX Transportation, Inc.*, subject to public notice and comment.

FOR DEFENDANT:


2/27/18

Date

BRYAN RHODE
Vice President
Public Safety, Health & Environment

21